

Dennis I. Wilenchik, Esq. #005350
William M. Horne, Esq. #033654
admin@wb-law.com
*Attorneys for Defendant Ira J. Gaines*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Ira Jeffrey Gaines, Sue L. McCluskey, and David Michael Rees,<br><br>　　　　　　Defendants. | Case No.: 2:21-cr-00266-GMS<br><br>**DEFENDANT IRA J. GAINES MOTION TO DISMISS** |

　　　Defendant Ira J Gaines respectfully moves the Court to dismiss the Indictment against him pursuant to Rules 7 and 12 of the Federal Rules of Criminal Procedure because it is invalid for the reasons stated below. It is unconstitutionally vague, conclusory, and fails to provide Gaines with fair notice of the specific charges against him. It also fails to effectually state the elements of falsity, fails to state offenses for securities fraud and wire fraud, and fails to allege adequately any specific intent to defraud.

　　　This motion is supported by the accompanying Memorandum, and the record in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

　　　The essence of the government's allegations against Ira Jeffrey Gaines ("Gaines") are a vague conspiracy charge, four vague securities fraud charges, and five vague wire fraud charges. Other Counts, alleging money laundering and aggravated identity theft, are merely derivative as they depend on Gaines's commission of an underlying crime, i.e., fraud.

The charges revolve around Gaines's sale or attempt to sell four "penny" stocks, which the government conclusory characterizes as "fraudulent microcap transactions." But the government has failed to allege any specific conduct that makes Gaines's actions or attempted actions fraudulent or criminal.

The Indictment alleges that Gaines, directly or indirectly through others, placed his stock in the names of nominees, converted restricted stock into unrestricted stock, and hired third parties to promote some of the stocks. Although the Indictment alleges that he did so fraudulently, none of these actions, in themselves, are fraudulent or a material deception. None of these allegations constitute notice of a criminal activity.

- It is not illegal or a violation of securities regulations to have someone else, a nominee, hold stock in another person's name. This is particularly true where one of the nominees was Gaines's wife and part of his community interest. Her son also held some of Gaines' stock.
- It is not illegal or a violation of securities regulations to convert restricted stock into unrestricted stock.
- It is not illegal or a violation of securities regulations to hire someone to promote a stock, unless there is some material falsehood being promulgated by the perpetuator, and here there is none.

Of course, something more, such as making misleading statements about a company's revenues during a promotion, can make such actions illegal.

That **something more** is missing entirely from the government's Indictment.

Gaines cannot reasonably prepare to defend himself when he does not know what he is defending against. Gaines never intended for anyone to make any false statement in any promotion, and there is no factual allegation as to the false statement that was made. He denies doing anything criminal illegal, and merely describing otherwise legal actions as fraudulent or false does not fairly inform him of the conduct that was allegedly criminal or illegal. Nor does the Indictment state the elements required for conviction of securities and wire fraud or conspiracy against the government, or any "victim."

2

For these reasons Gaines respectfully moves the Court to dismiss the Indictment.

## I.   STANDARD OF REVIEW

When a motion to dismiss an indictment is brought, the Court reviews the motion to determine if the indictment sufficiently details the elements of the charged offenses, apprises the defendant of what he must be prepared to address, and enables the defendant to avoid double jeopardy. *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *United State. v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982).

An objection to the validity of an indictment can be brought at any time. However, the timing is important. "[A] defendant who objects to the indictment before trial . . . is entitled to a more exacting review of the indictment than one who waits until after trial to object." *United States v. Pirro*, 212 F.3d 86, 92 (2nd Cir. 2000).

## II.   ARGUMENT

The Indictment generally lists statutes that Gaines allegedly flouted and provides little detail about various actions that he personally took. However, none of these actions that are set out are necessarily illegal, leaving the criminality at issue subject to speculation and the Indictment defective. Broad conclusory allegations do not suffice to put a defendant on notice of the specific criminal conduct alleged.

### A.   The Indictment is Invalid Because it is Unconstitutionally Vague and Fails to Inform Gaines of the Specific Offenses He Allegedly Committed.

The Fifth Amendment protects fundamental fairness by requiring a grand jury indictment for felonious crimes, and the Sixth Amendment furthers that protection by requiring the government to inform the defendant "of the nature and cause of the accusation." U.S. CONST. amends. V, VI. The criminal Rules encapsulate these protections by requiring all indictments to contain "a plain, concise, and definite statement of the essential facts constituting the offense charged." Fed R. Crim. P. 7(c)(1). An indictment is subject to dismissal for lack of specificity or failure to state an offense. *Id.* at 12(b)(3)(B)(iii), (v). Conclusory or formulaic allegations should not be enough.

The Supreme Court has held that it is not enough to recite the language of criminal statute that the defendant is alleged to have violated. *Russell,* 369 U.S. at 764. The indictment "must descend to particulars." *Id.* at 765 (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

An indictment that fails to meet these minimal requirements is invalid and must be dismissed. *See Russell*, 369 U.S. at 770; *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979). *See also United States v. Carroll*, No. CR-13-0566, 2015 WL 2251206 at *1 (N.D. Calif. May 13, 2015) (stating that an indictment fails to state an offense when it does not allege facts that, if proven, would constitute a violation of the law that the defendant is charged with violating). This Indictment, however, does little more than recite the language of the statutes and conclusions that the defendant violated them.

When the foundation of an indictment is built on fraud or deceit, as this Indictment is, descending to particulars means the government must identify the falsehoods: the fraudulent pretenses, presentations, promises or omissions of material fact that comprise the fraud or deceit. "A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstance." *United States v. Hess*, 124 U.S. 483, 487-88 (1888); *but see United States v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010) (affirming that while necessary allegations cannot be left to inference, an indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied") (citation omitted).

A Tenth Circuit case is instructive on applying these requirements. In *United States v. Curtis*, the Court of Appeals concluded that the evidence at trial supported the defendant's conviction on four counts of mail fraud for devising a "scheme and artifice to defraud persons looking for dates or marriage." 506 F.2d 985, 985-86 (10th Cir. 1974). Nonetheless, the court reversed the conviction and ordered the trial court to dismiss the indictment because the government had done little more than plead the statutory language "without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, misrepresentations or promises forming a part of it." *Id.* at 992.

It was not that the charges lacked some measure of specificity or detail. Count one of the *Curtis* indictment stated, for example, that as part of the scheme and artifice, the defendant "did prepare and cause to be placed in an authorized depository for mail matter false and fictitious Compatibility Questionnaires, addressed to the persons responding to the advertisements about the computer matching services, to be sent and delivered by the Postal Service of the United States." *Id.* at 988. Another Count alleged the defendant had mailed letters 'containing misrepresentations about the computer service, management, Investigating Department, and alleged invoices for computer service work, for the purpose of lulling or soothing the complaints of persons who had paid for services not provided by Computer Matching Institute." *Id.* at 989.

The Tenth Circuit's concern was with the quality or nature of these details. Aside from conclusory adjectives, the indictment failed to identify the pretenses, representations, and promises that were false or fraudulent. *Id.* As the Tenth Circuit noted:

> Certainly the compatibility questionnaire, the post office box, the business office, the checks or their receipt, were not 'false or fictitious' per se. The enumeration of acts in implementation of some scheme or artifice, but under the allegations that they were themselves 'in substance' such a scheme and 'part of it' did more to mask what the misrepresentations, scheme or artifice were claimed to have been than to explain them.

*Id.*

The Tenth Circuit's concern was very basic. An indictment alleging fraud or deceit needs to identify the misrepresentations that are at the heart of the alleged scheme. Simply reciting a series of acts, none of which are criminal in themselves, doesn't provide a defendant with the constitutionally required notice.

This concern isn't limited to fraud. *Russell* commands the government to notice the defendant what it is that he or she has done that was criminal. *See, e.g.*, *United States v. Buddenberg,* No. Cr-09-00263, 2010 WL 2735547 at *3, (N.D. Calif. July 12, 2010) (stating that "any defendant – constitutionally presumed to be innocent – would be hard-pressed to discern from Count Two what it is that he or she has done that is alleged to have violated the law.").

In this matter, the government's Indictment is equally vague, absent of notice, and constitutionally deficient.

The first five pages following the caption make conclusory allegations such as "obtaining 'unrestricted' stock by fraud" and "falsely promoting the stock." Or by a litany of acts that, as in *Curtis*, are not false or fictious per se. For example, in discussing Gaines's sale of Cure Pharmaceutical Holdings Corp. stock, the government alleges that "35,000 restricted shares were acquired in two tranches by GAINES in 2017, transferred to M.N. in 2018, fraudulently converted into unrestricted shares, and then sold by M.N., on behalf of GAINES, in 2019." Indictment ¶ 14. None of these acts are per se illegal, and labeling them as fraudulent or stating that they were done fraudulently do not alert anyone, much less Gaines himself, as to what Gaines did that was fraudulent.

The Indictment does not state the person who converted the CURR shares into unrestricted stock. It does not state how the stocks were converted. It does not say why the conversion was fraudulent. Rule 144 of the Securities Act of 1933 sets forth a "safe harbor" for the sale of stock that has been "restricted." Such restrictions primarily involve shares that were not registered with the Securities and Exchange Commission. and Rule 144 sets out various conditions and circumstances that can be met to sell such shares and for the removal of the "legend" stating that the shares are "restricted. *See* 17 C.F.R. § 230.144 ("Rule 144") (2020); *see also Rule 144: Selling Restricted and Control Securities*, SEC INVESTOR PUBLICATIONS, https://www.sec.gov/reportspubs/investor-publications/investorpubsrule144htm.html (last visited Nov. 2, 2021); *"Restricted" Securities: Removing the Restrictive Legend*, SEC FAST ANSWERS, https://www.sec.gov/fast-answers/answersrestrichtm.html (last visited Nov. 2, 2021).

The specific Counts are equally devoid of information about what Gaines did that was illegal. The government alleges thirteen overt acts that were alleged as part of a conspiracy against the government but again, none of the overt acts describe any illegality per se, or how the government was harmed. At worst, the government alleges, parenthetically, that a "false" consulting agreement was used by Gaines or C.H., who is Gaines's wife, in connection with Gaines' use of his wife as a nominee. (There is nothing false about it.) This allegation is even less informative than the false and fictitious compatibility questionnaires that were mailed in *Curtis*. The Indictment does not state how and why the consulting agreement was false, or how its falsity

6

was material to the conspiracy, which itself is devoid of any information about how the use of nominees, stock conversions, and promotions were fraudulent, much less criminal or illegal.

Counts two through five, broadly alleging securities fraud, do nothing more than recite the language of the statute and make generic allegations. Counts two and three allege that "Attorney One" authored opinion letters falsely attesting that CURR and LVVV shares should be unrestricted. Maybe so. But without something more, this nothing more than a generic allegation, and certainly as to Gaines himself.

Likewise Counts four and five alleged that "Promoter 1" engaged in promotional campaigns for GRNH and ADMQ "as directed" by Gaines. Here, the generic allegation doesn't even allege that the promotional campaigns were misleading or untrue. There is nothing illegal about promoting recent activities that a company has undertaken if the news release or bulletin accurately reports those activities. The problem arises when the information is false or misleading. *See, e.g.*, *Microcap Stock: A Guide for Investors*, SEC INVESTOR PUBLICATIONS, https://www.sec.gov/reportspubs/investor-publications/investorpubsmicrocapstockhtm.html (last visited Nov. 2, 2021). But there is no allegation here that it was, or that Gaines was aware of it. The Indictment fails to provide "something more," the information as to how the promotional campaigns were false or misleading, or just how Gaines in any way made them false or misleading.

Counts six through ten broadly allege wire fraud. These Counts contain nothing more than generic allegations as well, i.e., that the defendants were attempting to devise and execute a scheme to defraud through the use of interstate electronic communications. The Counts allege the issuance of stock, three payments to transfer agents, and a payment to "Promoter 1," and nothing more. As in the earlier counts, the government has made no attempt to detail how the actions were fraudulent, or even who was deceived or defrauded.

Counts eleven through twenty-seven, which allege transactional and concealment money laundering, are derivative counts that require Gaines' involvement in a specified unlawful activity, of which wire fraud is one. Absent some detail about that wire fraud, these Counts are just as devoid of the constitutionally required notice as the wire fraud counts. The Counts merely detail a series of transactions between various alleged co-conspirators, nominees and various financial

7

bank accounts, none of which in themselves are illegal, and no additional detail is provided as to any illegal end or aim. Something more is absent.

Counts twenty-eight through thirty-two allege aggravated identity theft, but are also derivative because aggravated identify theft, which is simply a sentence enhancement, is based on the commission of an enumerated felony. *See* 18 U.S. Code § 1028A(a)(1). In this matter, the only enumerated felony is wire fraud. *Id.* at § 1028A(c). But if the wire fraud counts are invalid, so are the aggravated identity theft counts. Moreover, as with the rest of the Indictment, the charges fail to specify any actual illegality. Four counts allege that stock was issued, presumably under one of the alleged conspirators' direction, in the name of C.H. or J.H. (Gaines's wife and son), requiring even a discerning reader to guess as to the illegality involved. Count thirty alleges that Gaines's assistant, Sue McCluskey, signed his wife's name on a letter to a transfer agent, but even here facts are missing as to whether she did so without permission or authority. Something more is missing.

As the Supreme Court stated *in Hess*, crimes require both acts and intent, or more precisely, acts that violate a law. As the Court also said, an indictment needs to provide some reasonable particulars about the time, place, and circumstances of the offenses. Otherwise, defendants – as well as subsequent courts – are left to guess about what offense was committed. Or what offense the grand jury believed was committed.

In this matter, the guesses are not just to the offenses. Even the necessary inferences require unconstitutional guesswork. Did Gaines misstate his holding period? Did he lie about the amount of stock that he owned? Was he really an affiliate or owner of the stock? Did he file or have others file a false report with the stock regulators?

The Indictment is so woefully short on these basics that a reasonable person who is unfamiliar with the law might surmise that stocks can never be held by nominees, that restricted stocks can never be converted into unrestricted stocks, or that no statements can ever be made about a company's performance. There is nothing in this Indictment to show that the grand jurors believed anything more than that, or what they were asked to do.

Something more is needed.

Neither the government's disclosures to date nor the factual predicates provided by other co-conspirators in entering guilty pleas can resuscitate a defective indictment. Nor can a bill of particulars or further disclosures save it. The Indictment before this Court is vague and fails to state the offenses charged. It is a string of innuendo, and the Gaines is respectfully asking this Court to find this Indictment to be invalid and dismiss it.

### B. The Securities Fraud Counts and Derivative Charges Do Not Relate to the Sale of Securities in the United States.

At least three of the securities fraud counts, as well as those other counts that derive from these charges should also be dismissed because they do not relate to the sale or purchase of securities in the jurisdiction of the United States.

Security fraud charges require proof of a fraud, misrepresentation or omission "in connection with the purchase or sale of securities." *See Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 137-78 (2011); *see also* 15 U.S.C. §§ 78j(b), 17 C.F.R. §240.10b-5. The government may also need to show some degree of knowing or willful intent, and it is not necessary for the fraud to be completed if the defendant engaged in a scheme or artifice to defraud. But at the very least the allegations must relate to the sale or purchase of securities.

And, not just any securities anywhere, but securities that are purchased or sold in the United States.

The Supreme Court held in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 266 (2010), that the focus of securities fraud charges "is not upon the place where the deception originated, but upon purchases and sales of securities in the United States."

*Morrison* was a civil case, but its reasoning applies equally to criminal charges, as various courts have noted. *See, e.g.*, *United States v. Vilar*, 729 F.3d 62, 71-74 (2nd Cir. 2013); *accord United States v. Hussain*, 972 F.3d 1138, 1142 (9th Cir. 2020); *United States v. Perez*, 962 F.3d 420, 439 (9th Cir. 2020).

The Indictment alleges Gaines placed shares in the names of nominees, converted unrestricted stocks, and paid for stock promotions for the purpose of selling four stocks, Cure

Pharmaceutical Holdings Corp. (CURR); GreenGro Technologies (GRNH), Livewire Ergogenics (LVVV), and ADM Endeavors (ADMQ). However, according to the Indictment, most shares were transferred to nominees outside the United States: to M.N, who resides in Bermuda and is associated with Veritas Group, Limited, also located in Bermuda, and to P.P. who resides in Canada. Indictment ¶¶ 6, 14-16.

The Indictment alleges that CURR, GRNH, and LVVV (in whole or in part) stocks were transferred to these nominees for sale outside the United States:

- M.N., who was used as "**an international nominee,**" sold CURR stock at issue. Indictment ¶¶ 6(b), 14 (emphasis added).
- Gaines owned 17 million shares of GRNH and attempted to use nominees M.N. and P.P to sell the stock "**outside of the United States**." Indictment ¶15 (emphasis added).
- Gaines sent 4 million shares of GRNH to M.N. "for eventual sale **overseas**." Indictment ¶15(a) (emphasis added).
- Gaines paid a transfer agent to transfer 20.5 million shares of GRNH to P.P, whose "**overseas** brokerage account was closed before she could sell the stock." ¶15(d) (emphasis added).
- Gaines transferred to and used nominees C.H., Big Thunder, and M.N. to position 26 million shares of LVVV stock for sale but "the disposition of these shares after being transferred **overseas** to nominee M.N is unknown at this time." Indictment ¶ 16 (emphasis added).

Under the Supreme Court's holding in *Morrison*, counts two, three and four fail to state any criminal offense because they pertain to sales outside the United States and therefore should be dismissed.

### C. Counts Six Through Nine Fail to Identify the Victims from Whom Property was Obtained, or Gaines's Attempt to Deceive Them.

The wire fraud counts are similarly defective in that the Indictment does not allege any victims of the alleged scheme to defraud. It does not allege that money was obtained from any

10

victims or that it was Gaines's intent to do so. Failure to do so is another reason why these counts, and their derivative charges are invalid.

As the Supreme Court recently affirmed, the wire and mail fraud statutes are limited to deceptive schemes to deprive a victim of money or property. *Kelly v. United States*, 140 S. Ct. 1565, 1571-72 (2020). These statutes do not authorize federal prosecutors to set standards of disclosure or behavior. *Id.* at 1571.

The Indictment alleges that, as part of some scheme, Gaines concealed his identity from stock regulators, stock brokerage firms, and taxing authorities. Indictment ¶ 19. It also alleges that Gaines fraudulently converted restricted stock into unrestricted stock. *Id.* Counts Six through Nine, which are four of the five alleged wire fraud counts, allege actions taken in support of these alleged deceptions.

But as *Kelly* points out, wire fraud charges based on these alleged deceptions will not lie unless they were aimed at obtaining money or property from the regulators, brokerage firms or taxing authorities. The Indictment, however, does not allege that Gaines sought to obtain money or property from any of the foregoing. It does not allege that anyone else was deceived by these actions. As the Ninth Circuit has held, the intent, in a wire fraud case, "must be to obtain money or property from the one who is deceived." *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989).

The Indictment tracks the language of the wire fraud statute, 18. U.S.C. § 1343, by alleging "a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses and representations." Indictment at 10. While an indictment need not plead required facts that that are necessarily implied, *Buckley*, 689 F.2d at 899, tracking the statute is not sufficient when the "indictment or information does not set forth each and every element of the offense." *United States v. Morrison*, 536 F.2d 286, 287 (9th Cir. 1976).

Here the Indictment fails to allege or carry any necessary implication regarding the identity of the victims or class of victims of Gaines's alleged scheme.

As the Indictment states, after the SEC issued an order in 2004, stock brokerage firms refused to open stock trading accounts for Gaines or keep his existing ones open. Indictment ¶ 10.

(However, nothing in the order prevented Gaines from trading stocks.) The Indictment itself implies that Gaines's intent was simply to create an alternate mechanism for selling his stocks, one of the traditional rights of ownership.

The Indictment fails to inform Gaines as to these offenses or as to how to defend against them. *See e.g.*, *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (stating that "an indictment must furnish the defendant with a sufficient description of the charges against him to enable him to prepare his defense"). Clearly a jury could easily be misled. The Indictment provides this Court with no assurance as to whether grand jurors were charging Gaines in Counts Six through Nine with wire fraud based on an alleged deception of stock regulators, stock brokerage firms, and taxing authorities, or alternatively, on the belief that his actions were somehow deceiving unknown prospective shareholders. *See e.g.*, *Pirro*, 212 F.3d at 92 (stating that if an indictment "does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury ***or that the grand jury has acted properly in indicting him***")(citations omitted)(emphasis added); *Curtis*, 506 F.2d at 989 (finding an indictment invalid "the grand jury may have had a concept of the scheme essentially different from that relied upon the government before the trial jury").

Such amorphous Counts fail to state any criminal offense.

### D. The Indictment Fails to Allege the Material Falsity of Any Acts, Representations, or Omissions.

The Indictment is invalid also because it lacks factual allegations about the material falsity of any acts, representations, or omissions that Gaines made. It fails to show how any of Gaines's actions were material to deceiving any victims.

An indictment's failure to detail each element of a charged offense is generally considered a fatal defect. *See Buckley*, 689 F.2d at 897, (9th Cir. 1982); *Keith*, 605 F.2d at 464. When an indictment fails to allege facts that, if proven, would constitute a violation of law, it has failed to state an offense. *United States v. Holmes*, No. 5:18-cr-00258, 2020 WL 666563 at *12 (N.D. Calif. Feb. 11, 2020).

The materiality of the relevant alleged falsehood, whether an alleged misrepresentation, omission or scheme to deceive, is an element of wire fraud charges. *Neder v. United States*, 527 U.S. 1, 25 (1999). Moreover, a scheme to defraud under the wire fraud statute requires proof of material falsehoods. *Id.* at 22-23; *United States v. Lindsey*, 850 F. 3d, 1009, 1013 (9th Cir. 2017). Similarly, materiality is an element of securities fraud charges. *See, e.g.*, *United States v Langford*, 946 F.2d 798, 803 (9th Cir. 1991). In these cases, in which the offense must be connected to the purchase or sale of securities, the relevant standard of materiality is whether "a misrepresentation or omission would influence a reasonable investor." *United States v. Berger*, 473 F.3d 1080, 1097 (9th Cir. 2007).

The Indictment in this matter fails to allege any material misrepresentations, omissions, or deceits. Rather, it makes broad allegations that are conclusory rather than factual. Or it makes conclusions that are immaterial to the charged offenses.

The heart of the Indictment, as stated above, are the allegations that Gaines, directly or through others, used nominees to conceal his ownership, falsely converted restricted stock into unrestricted stock, and falsely promoted stock.

The Indictment provides numerous factual allegations in support of the claim that Gaines used nominees. However, it fails to allege any materiality of the use of nominees, or any facts that might show the materiality of the use of nominees, in a scheme to defraud or deceive. It alleges that he concealed his identity from stock regulators, brokerage firms, and taxing authorities, but there are no factual allegations showing how this concealment was material to any of the counts. The Indictment does not explain how stock regulators were defrauded or how the use of nominees was relevant to any of the alleged offenses. Brokerage houses were no longer allowing Gaines to sell stock, but there is nothing to suggest that the use of nominees deceived brokerage houses. Nor are there allegations or logical inference that the use of nominees deceived stockholders, for whom the prior ownership of shares is irrelevant to their purchase of such shares – or whether trading in his name or through a nominee would have any influence on a reasonable investor.

The Indictment concludes that Gaines fraudulently converted restricted stocks into unrestricted stocks. Such restrictions are generally displayed in a "legend" on the back of a stock

certificates. The most common legend is a statement that "the shares have not been registered under the Securities Act of 1933 (the "Act") and cannot be sold until the shares are registered or the legend is removed. Notably, the Indictment doesn't even state what the restrictions were that Gaines allegedly removed fraudulently.

Even more concerning, the Indictment does not provide any information about how Gaines's conversion of restricted stocks into unrestricted stocks was in any way fraudulent.

Legends are something that companies place upon their stock certificates. The Act itself does not make the removal of legends unlawful. Under Rule 144, restricted stocks can be sold, and legends removed when applicable conditions are met. SEC Release No. 338869 20 n.65, at https://www.sec.gov/rules/final/2007/33-8869.pdf (last visited Nov. 2, 2021) (stating that the SEC does "not object if issuers remove restrictive legends from securities held by non-affiliates after all of the applicable conditions in Rule 144 are satisfied"). The SEC went on to state that "the removal of a legend is a matter solely in the discretion of the issuer of the securities" and that disputes about the removal of legends "are governed by state law or contractual agreements, rather than federal law." *Id.*

The Indictment states that an attorney authored opinion letters falsely attesting that CURR and LVVV shares should be unrestricted, and "at Gaines's direction" with regard to the LVVV shares. Yet this is just a ridiculous conclusion to assert. It is an attorney's duties to the client to address the legality, not the other way around. The Indictment fails to provide any factual allegations setting forth any misrepresentation, omission, or falsehood that was material to the conversions or subsequent sales of these stocks. It fails to state any offense with regard to the conversion of restricted stocks into unrestricted stocks. (Indeed, the implication is that Gaines is the only victim here, that an attorney took his money under false pretenses.)

The Indictment's conclusory allegation that Gaines paid for the false promotion of stocks is equally devoid of materiality – or facts showing any false statement by Gaines. Aside from providing the initials of an alleged promoter, there are no factual allegations as to the promotion itself – how it was done, and any of the misstatements, omissions, or falsehoods that were material to making the promotion fraudulent by Gaines. The Indictment's information is so broad that it

14

could equally apply to a news release issued by IBM or Apple. It also fails to state an offense.

The remaining allegations in the Indictment lack any materiality to the government's securities fraud and wire fraud charges at all. Gaines's failure to withhold employment taxes or to provide a Form W-2 or 1099, or an alleged "false consulting agreement" with his wife are not material to any of the charged criminal offenses. Nor are any of the other disparate alleged facts.

The element of materiality requires the government to allege specific misrepresentations, omissions, or actions that constitute the falsehood. In cases involving security fraud charges, these specifics particularly needed "to avoid the vice of multiplicity," that is, to ensure that the defendant is not being charged twice for the same offense. *See, e.g.*, *Langford*, 946 F.2d at 804 (stating that "each count must specify a false statement of material fact—not a full-blown scheme to defraud – in connection with that purchase or sale).

In securities fraud and wire fraud charges, the element of materiality requires the government to allege specific misrepresentations, omissions, or actions that constitute the falsehood. The government has failed to do so, and the Indictment should be dismissed.

### E. The Indictment Fails to Allege a Valid Conspiracy Against the United States.

As with the other counts, the Indictment's conspiracy count is infected by its failure to allege the elements of a conspiracy charge against the United States. While a charge of conspiracy against the United States encompasses a wide range of possible actions that might not otherwise be criminal, the offense requires the government to show that (1) the defendant entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means, and (4) to prove at least one overt act in support of the conspiracy. *United States v. Rodman*, 776 F.3d 638, 642 (9th Cir. 2015).

In this matter, the Indictment has failed to allege what lawful function of the government has been obstructed. Security regulation? Income tax collection? Financial regulation? The Indictment, at best, broadly claims the conspiracy to be some agreement to commit securities fraud, wire fraud, money laundering, and aggravated identify theft, but this does not help because as discussed above, the Indictment fails to state any specifics of these broad offenses. It requires

Gaines, and this Court, to speculate as to the lawful function that the alleged agreement is obstructing. Without knowing which lawful government function is obstructed, the materiality of any alleged functions is also left to speculation.

The Indictment fails to state the elements of the conspiracy offense, fails to apprise Gaines of what he needs to know to defend himself, and establish the limits of jeopardy.

## CONCLUSION

The Indictment before this Court is fatally defective on numerous levels. Sufficient statements of the required elements of the offenses are missing. Some Counts are extended beyond the offenses' territorial reach. It fails to allege any misrepresentations, omissions, or falsehoods, much less state their materiality to any criminal behavior. The Indictment is unconstitutionally vague, lacking in specificity, and fails to state offenses.

For these reasons, and those detailed above, Defendant Ira Jeffrey Gaines asks the Court to dismiss the Indictment.

**RESPECTFULLY SUBMITTED** on November 2, 2021.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
William M. Horne, Esq.
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Defendant Ira J. Gaines*



**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2021, the foregoing document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the individuals registered.

By: */s/ Christine M. Ferreira*

