**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-00266-001-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Ira Jeffrey Gaines, | |
| Defendant. | |

Before the Court is Ira Jeffrey Gaines's ("Defendant") Motion to Dismiss (Doc. 121). For the following reasons, Defendant's Motion is denied.

**BACKGROUND**

The speaking indictment alleges that Defendant was permanently enjoined from "engaging in certain securities transactions" by the Securities and Exchange Commission ("SEC") in 2004. (Doc. 65 at 4.) In 2017, Defendant allegedly formulated a scheme to fraudulently trade microcap stocks, including Cure Pharmaceuticals Holding Corp. ("CURR"), GreenGro Technologies, Inc. ("GRNH"), Livewire Ergogenics, Inc. ("LVVV"), and ADM Endeavors, Inc. ("ADMQ"). At its core, Defendant allegedly concealed his identity as the true owner of shares in CURR, GRNH, LVVV, and ADMQ by using nominees to trade the shares on his behalf. As part of the conspiracy, Defendant allegedly participated in a scheme where an individual identified in the indictment as Attorney 1 authored opinion letters that fraudulently attested that shares of CURR and

LVVV should be converted from restricted to unrestricted, allowing their sale to the public. Defendant also allegedly engaged third parties to promote the stock held by his nominees, so shares could be sold at inflated prices. Defendant and his co-conspirators allegedly earned over $800,000 because of their actions.

Defendant is charged in the indictment with having committed one count of Conspiracy, 18 U.S.C. § 371, four counts of Securities Fraud, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5, five counts of Wire Fraud, 18 U.S.C. § 1343, eight counts of Transactional Money Laundering, 18 U.S.C. § 1957, nine counts of Concealment Money Laundering, 18 U.S.C. 1956(a)(1)(B), and five counts of Aggravated Identity Theft, 18 U.S.C. § 1028A. (Doc. 65 at 6–14.)

**DISCUSSION**

**I.     Legal Standard**

Motions to dismiss an indictment, including for lack of specificity or failure to state an offense, are proper under Federal Rule of Criminal Procedure 12(b)(3). Fed. R. Crim. Proc. 12(b)(3)(B)(iii); *id.* 12(b)(3)(B)(v). An "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. Proc. 7(c)(1). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982). But "the issue in judging the sufficiency of the indictment is whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." *Id.* at 897. To that end, while the language of the statute may be used "in the general description of an offence, . . . it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). Allegations in an indictment "are presumed to be true," *Buckley*, 689 F.2d at 897, and an indictment "need not specify the theories or evidence

upon which the government will rely to prove those facts." *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993). "[A]n indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *Buckley*, 689 F.2d at 899.

"In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The "court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *Id.*

## II. Analysis

### A. Specificity of the Indictment

Defendant, relying on *United States v. Curtis*, argues the indictment does not identify the misrepresentations that underpin liability in this case. 506 F.2d 985 (10th Cir. 1974). In *Curtis*, the indictment charged the defendant with carrying out a "scheme and artifice to defraud . . . by means of false and fraudulent pretenses," involving a "computer matching service for single persons," and specifically listed several steps the defendant took to carry out this scheme. *Id.* at 988. However, the indictment "left to speculation" what the underlying scheme was, or the content of the false and fraudulent promises made to its victims. *Id.* at 989.

This indictment is more specific than the indictment in *Curtis*. Unlike in *Curtis*, the indictment articulates the purpose of the alleged conspiracy: To conceal Defendant's identity as the true owner of stocks by using nominees who then traded the stocks on Defendant's behalf, to fraudulently convert "restricted stock, or stock that could not be freely traded on a public exchange, into unrestricted stock that could be publicly traded," and to falsely promote certain stocks so they would sell at an inflated price. (Doc. 65 at 7.) Further, the indictment is replete with factual detail, allowing Defendant to determine which events and actions the Government believes give rise to the charges he faces.

As to Count One, the indictment not only alleges the elements of the offense but

provides specific factual allegations as to the purpose of the conspiracy as well as thirteen overt acts that are alleged to have been undertaken in furtherance of the conspiracy on specified dates. It goes above and beyond pleading "little more than the statutory language" and adequately informs Defendant as to the "nature or character" of the conspiracy he is alleged to have taken part in. *Curtis*, 506 F.2d at 992; *see also United States v. Ayers*, 924 F.2d 1468, 1484 (9th Cir. 1991) (finding indictment that specified five separate means and methods used to carry out conspiracy and fifteen overt acts to be sufficiently definite).

That Count One does not explain exactly the manner in which the challenged activities were illegal does not undermine its sufficiency. The indictment alleges that Defendant conspired with others to "fraudulently" convert restricted stock and that he hired "third parties to falsely promote the stock" held by his nominees. (Doc. 65 at 7.) It also alleges that the object of the conspiracy was to commit securities fraud, wire fraud, money laundering, and aggravated identity theft. (Doc. 65 at 6–7.) The Government has alleged that the specific activities enumerated in the indictment were fraudulent; that is sufficient to give notice to Defendant as to the acts challenged. *See Buckley*, 689 F.2d at 897 ("The allegations of the indictment are presumed to be true"). The Government is not required to provide precise detail as to why it believes the challenged actions were fraudulent, because the indictment "need not specify the theories or evidence upon which the government will rely to prove" its case. *Cochrane*, 985 F.2d at 1031. Defendant is entitled to notice of the charges he faces, not "to know all of the evidence the government would use to prove the charges against him." *United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013).

Counts Two through Five are also sufficiently definite. As to all four counts, the indictment alleges that all requisite elements of the offense were committed. The indictment also provides factual particularity that notifies Defendant what specific activities the Government asserts were unlawful. Counts Two and Three allege that Defendant participated in a scheme through which Attorney 1 authored, on specific dates,

opinion letters "falsely attesting" that shares of restricted stock should be unrestricted. (Doc. 65 at 9.) These allegations are sufficient because they list the elements of the crime, incorporate the factual predicate of the indictment, and allege that—as part of the scheme or artifice to defraud—specific attorney opinion letters made false statements. As with Count One, the precise details of how the letters were false is not required for the indictment to properly provide notice. Further, the indictment as a whole allows Defendant to draw several inferences as to why these letters might be false, including that the stocks were not held in the name of their true owner. Likewise, Counts Four and Five allege that Defendant directed Promoter 1[1] to engage "in a promotional campaign" for GRNH and ADMQ stock on specific dates. (Doc. 65 at 10.) Read with the rest of the indictment, these counts necessarily imply that the promotional campaign "made untrue statements about or omitted a statement of material fact," namely that Defendant was not the true owner of these shares. (Doc. 65 at 9.)

Counts Six through Ten, alleging wire fraud, provide sufficient notice to Defendant. Read together with the entire indictment, they go beyond alleging the elements of the offense because they specify five discrete transactions that are alleged to be part of the overarching scheme to conceal Defendant's identity as the true owner of the relevant shares, use false opinion letters to convert shares from restricted to unrestricted, and employ promoters to artificially increase the sale price of certain stocks. For the same reasons as Counts One through Five, they are sufficiently definite as to give Defendant notice as to the charges he faces.[2]

**B.  Sale or Purchase of Securities in the United States**

Section 10(b) of the Securities Exchange Act of 1934 prohibits "deceptive conduct 'in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S.

---

[1] Like Attorney 1, Promoter 1 is not identified by name in the indictment.

[2] Defendant concedes that the remaining counts rise and fall with Counts Six through Ten, because they are all derivative counts requiring Defendant's involvement in wire fraud. (Doc. 121 at 7–8.) Since Counts Six through Ten provide sufficient notice to Defendant, the remaining counts of the indictment are also sufficient.

247, 266 (2010) (quoting 15 U.S.C. § 78j(b)). Consistent with the general presumption against extraterritorial application of federal law, the Supreme Court has held that § 10(b) applies to only two types of transactions: (1) "[T]ransactions in securities listed on domestic exchanges," and (2) "domestic transactions in other securities." *Id.* at 267. For securities not listed on domestic exchanges (like in this case), the "focus of the Exchange Act is not upon the place where the deception originated," but whether the transaction at issue took place in the United States. *Id.* at 266; *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 944 (9th Cir. 2018).

A securities transaction takes place in the United States if either "the purchaser incurred irrevocable liability within the United States to take and pay for a security, or . . . the seller incurred irrevocable liability within the United States to deliver a security." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012); *Stoyas*, 896 F.3d at 948 (adopting the *Absolute Activist* test). A securities transaction is also domestic if title to the security is transferred within the United States. *Absolute Activist*, 677 F.3d at 68.

The Exchange Act applies to Counts Two, Three, and Five because the indictment necessarily implies that some purchasers of CURR were located in the United States and alleges that some of Defendant's nominees were located in the United States when they sold shares of LVVV and ADMQ. As to Count Two, the indictment alleges that Defendant used "nominees Big Thunder and M.N. to convert and sell 135,000 shares of CURR stock," and that M.N. ultimately sold the shares in question. (Doc. 65 at 5.) Big Thunder, LLC is a domestic corporate entity, which the indictment alleges was formed by Defendant and Sue McCluskey, both Arizona residents. (Doc. 65 at 3.) M.N. is allegedly a resident of Bermuda. (Doc. 65 at 4.) The indictment is silent as to where the ultimate purchasers of CURR were located. This silence, in the context of a prosecution under the Exchange Act, necessarily implies that at least some purchasers of CURR were located in the United States; to the extent they were not, the indictment does not state a claim as to such transactions.

Count Three relates to LVVV, which the indictment alleges Defendant positioned for sale using "nominees C.H., Big Thunder, and M.N." (Doc. 65 at 6.)  C.H. is identified as Defendant's wife, who resides in Phoenix, Arizona. (Doc. 65 at 2.)  Consequently, because at least two of the sellers reside in the United States, the facts alleged in the indictment lead to the inference that at least some of the sellers of LVVV incurred irrevocable liability in the United States.  So too with Count Five, because the indictment alleges Defendant used C.H. to sell shares of ADMQ on his behalf.  Thus, Counts Three and Five satisfy *Morrison*, and the Exchange Act applies to the conduct alleged therein.

To the extent that Count Four alleges that M.N. made sales of GRNH to overseas purchasers, such conduct cannot state a claim under the Exchange Act.  The indictment alleges in Paragraph 15 that Defendant "attempted to use nominees M.N. and P.P. to sell GRNH stock outside of the United States" and in Paragraph 15(a) that Defendant arranged for the transfer of 4,000,000 shares of GRNH stock to M.N. "for eventual sale overseas." (Doc. 65 at 5.)  The indictment alleges that M.N. was a resident of Bermuda.  Thus, M.N. presumably incurred irrevocable liability in Bermuda to deliver shares of GRNH to purchasers as to at least some transactions of GRNH.  And Paragraph 15(a) clearly states that at least some sales were made "overseas," implying that the purchasers in question were not located in the United States. (Doc. 65 at 5.)  As to any such sales, the Exchange Act does not apply.  Nevertheless, Count Four does allege that some sales occurred to purchasers whose location was not identified.  Just as with Count Two, the indictment necessarily implies that at least some such transactions occurred within the United States.  To the extent that there are no such transactions within the United States, Count Four fails to state a claim.

### C.  Identification of Victims

Defendant next argues that Counts Six through Ten fail to allege the identity of the victims of his alleged scheme. (Doc. 121 at 11.)  This argument fails because the indictment sufficiently indicates that the victims of his alleged scheme were market participants.

The federal "wire fraud statute . . . prohibits only deceptive 'schemes to deprive [the victim of] money or property.'" *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)). The indictment must allege that Defendant intended to "obtain money or property from the victim of the deceit." *United States v. Lew*, 875 F.2d 219, 222 (9th Cir. 1989).

Reading the indictment as a whole, drawing all necessary inferences from the facts alleged, and construing the indictment according to common sense, the indictment adequately alleges that the object of Defendant's deceptive scheme was to obtain money from investors on the market. *See Buckley*, 689 F.2d at 899. First, the indictment suggests both the fraudulent conversion of CURR stock to unrestricted and the use of promoters to inflate LVVV share prices were deceptions which allowed Defendant to earn more money off the trades than he otherwise would have. Further, it is reasonable to infer that fewer investors would have been willing to purchase the shares in question had they known that Defendant, who had been barred by the SEC from engaging in certain securities transactions, was the true owner of the shares. Therefore, the indictment adequately alleges that the object of Defendant's scheme was to obtain money from market participants by deception.

### D. Allegations of Material Falsity

Defendant's argument that the indictment fails to allege the materiality of any misrepresentations, falsehoods, or omissions also fails. (Doc. 121 at 13.) The securities fraud and wire fraud counts all allege that Defendant made material misstatements of fact in furtherance of his scheme. And at the motion to dismiss stage, the "court must accept the truth of the allegations in analyzing whether a cognizable offense has been charged." *Boren*, 278 F.3d at 914. That the indictment does not lay out the precise evidentiary basis the Government intends to use in proving that Defendant made a material false statement is not fatal, because the indictment "need not specify the theories or evidence upon which the government will rely." *Cochrane*, 985 F.2d at 1031; *see also United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) ("A motion to dismiss the indictment cannot be used as a

device for a summary trial of the evidence"). Thus, the indictment sufficiently alleges materiality.

### E. Allegation of Conspiracy

Defendant's final argument fails because the Government has alleged all elements required by the conspiracy statute. *See* 18 U.S.C. § 371. Section 371 criminalizes two different types of conspiracies: (1) "to commit any offense against the United States," and (2) "to defraud the United States." *Id.* While the two offenses may appear similar at first blush, they require the Government to prove different things at trial. An "offense against the United States" charge under § 371 requires the Government to prove "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *United States v. Johnson*, 297 F.3d 845, 868 (9th Cir. 2002). By contrast, a "defraud clause" case requires the Government to prove the defendant (1) "entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *United States v. Caldwell*, 989 F.2d 1056, 1058–59 (9th Cir. 1993), *overruled on other grounds by Neder v. United States*, 527 U.S. 1, 8–9 (1999).

Defendant's argument is premised on the Government pursuing a "defraud clause" charge under § 371. But the text of Count One makes clear that the Government's theory of the case is that Defendant conspired to commit an offense against the United States, not that he conspired to defraud the United States. (Doc. 65 at 6.) And the indictment alleges that Defendant committed all three required elements of the conspiracy charge. It alleges that Defendant entered into an agreement with his co-conspirators to commit a litany of offenses, including securities fraud, wire fraud, money laundering, and identity theft. (Doc. 65 at 7.) It also alleges that Defendant and his co-conspirators took thirteen overt acts in furtherance of the conspiracy. *Id.* at 7–8. And finally, it alleges that Defendant entered into the conspiracy with the intent to commit the underlying crimes. *Id.* at 6. Therefore, the indictment validly alleges a conspiracy against the United States under 18 U.S.C. § 371.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 121) is **DENIED.**

Dated this 24th day of January, 2022.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge